**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JORGE ROJAS, on behalf of himself and all others similarly situated, | |
| Plaintiff, | |
| v. | Case No.: 25-CV-01056 |
| CLEAR CREDIT AI, LLC, et al. | |
| Defendants. | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT**
**CLEAR LEAD SOLUTIONS CORP.'S AND SAJEEL MANZOOR'S**
**MOTION TO DISMISS**

## I.   INTRODUCTION

Attempts by the robocalling industry to blame the victims of their calls for failing to allege "sufficient" facts to state a claim for direct liability are nothing new. Trial and appellate courts have had little trouble rejecting such tactics.

But now, it has come to this.

Defendants Clear Lead Solutions Corp. and Sajeel Manzoor make a bold assertion without the corresponding factual predicate: that the Plaintiff cannot establish direct liability as to them, *despite Plaintiff having identified them* as directly liable parties through subpoenas in discovery in this litigation. For this reason, this Court, like nearly every other Court to consider similar motions, should reject it. The Plaintiff has plausibly alleged a case for direct liability at the pleadings stage entitling him to further discovery.

Defendants' motion should therefore be denied in its entirety.

## II.   FACTUAL BACKGROUND

On January 14, 2025, Plaintiff received a prerecorded telemarketing voicemail from 719-

1

410-3027 (the -27 number) to his cellular telephone. The message identified itself as the illegally and fictitiously named "Total Relief Services," claimed Plaintiff had a "fund" of "$48,000" available, and directed a return call to 754-732-1169 (the -69 number) "to apply for this emergency relief." Plaintiff alleges he had not consented to receive such calls. To identify who was calling him illegally and for no other reason, Plaintiff called back the number the next day, as instructed. During that call, the Plaintiff was sold credit repair services and received an e-mail with paperwork regarding the debt solutions offering sold by the Defendants from an e-mail address jerome.k@clearsolution.ai.

During discovery in this action, the Plaintiff served various subpoenas to various third parties and links in the telemarketing chain, including to JustDeliverIt, the telephone company for the -27 number, RingCentral, the telephone company for the -69 number, and Hostinger, the domain registrar for the clearsolution.ai domain name from which the Plaintiff received the subject email as a result of the illegal telemarketing call. The pertinent subpoenas and responses are attached herein as Exhibit A. To summarize those responses, each of these subpoenas tie both the -27 number, the -69 number, and the clearsolution.ai domain name to the moving Defendants. More specifically, JustDeliverIt revealed that the subscriber of record for the -27 number was Defendant "Clear Lead Solutions Corp.," which it listed as a "Lead Gen Company," utilized the clearsolution.ai domain name, and was registered by non-moving Defendant Sajjad Haider. Relatedly, a subpoena to RingCentral confirmed that the -69 number was also registered to non-moving Defendant Haider, again with the clearsolution.ai domain name, but this time under the other non-moving Defendant's name, Clear Credit AI, LLC. And finally, the Hostinger subpoena revealed that the subscriber of record for the clearsolution.ai domain was, at all pertinent times, registered to moving Defendant "Sajeel Manzoor," who listed his company as

2

moving Defendant "Clear Solutions."

The Amended Complaint summarizes the foregoing allegations, which are presumed to be true at the Motion to Dismiss stage: that, based on the aforementioned subpoena responses, both Manzoor and Haider personally participated in the telemarketing at issue: non-moving Defendant Haider by signing up for the -27 line under moving Defendant Clear Lead's name, and for the -69 line under non-moving Defendant Clear Credit AI, LLC's name, and both such numbers with the clearsolution.ai website, and moving Defendant Manzoor by registering/using the clearsolution.ai domain referenced to sign up for the phone services used to place the illegal calls, as well as on the calls themselves and in the follow-up email.

Moving Defendants Clear Lead and Manzoor have moved to dismiss, claiming that these facts are insufficient to demonstrate direct liability as against them at the pleadings stage. The motion acknowledges, as it must, that the Plaintiff has pled the aforementioned facts and linkages, while simultaneously disputing those subpoena responses, disputing their sufficiency in proving direct liability, as well as misrepresenting the Plaintiff's own pleading and connection, such as the contention that JustDeliverIt, a phone company, somehow was the actual entity that placed the calls, despite the complaint clearly alleging each such role, as further confirmed through subpoena. At best, Defendant's motion simply confirms that there exist factual issues as to the relationship and nature between the parties at issue which is inappropriate for resolution at the pleadings stage.

### III.    LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint that fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rather than require detailed pleadings, the

Rules demand only a "short and plain statement" of the claim showing that the pleader is entitled to relief, in order to give defendant fair notice of what the claim is and the grounds upon which it rests, not detailed factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 678 (cleaned up).

In determining whether a claim is plausible, the court must "draw on its experience and common sense." *Id.* at 678. After identifying elements to set forth a claim and removing conclusory allegations, the Court must accept all well-pled factual allegations as true and determine if they give rise to relief. *Id.* A complaint may be dismissed only where it appears that there are not "enough facts to state a claim that is plausible on its face," not merely because the defendant proffers some contrary facts. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Ordinarily, although consideration of a motion is limited to the complaint, several settled exceptions apply without converting the motion to one for summary judgment under Rule 12(d). In ruling on the motion, Court may consider documents that are both referenced in the complaint and central to the claim without conversion. *See 188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002). This doctrine applies even when the documents are merely referenced in the Complaint but latter supplied by the party with the motion response. *Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994). Similarly, in *Venture Assocs. v. Zenith Data Systems*, 987 F.2d 429, 431 (7th Cir. 1993), the Seventh Circuit held that documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.

## IV.    ARGUMENT

A.    *The Plaintiff has alleged direct liability in far greater detail than in other similar cases. Courts have already determined those allegations sufficient to infer direct liability.*

As described above, the Court's analysis must begin and end with whether or not the Plaintiff has plausibly alleged the Defendants' involvement in the calls with sufficient specificity to give rise to the inference of direct liability. The question presented by Defendants' motion is narrow: whether the operative pleading, taken as true and with reasonable inferences in Plaintiff's favor, plausibly alleges that these Defendants initiated the challenged prerecorded call. It does. Plaintiff has pled facts, including through subpoena responses, which sufficiently prove at the pleadings stage that Defendant directly placed the calls complained of. Indeed, the smattering of at least two companies and two individuals within the universe of tangible evidence linking them to the calls demonstrate a far greater connection than mere happenstance. Of note, the *very telephone number used to send the illegal calls*, the -27 number, is registered in moving Defendant Clear Lead Solutions' name with the telephone company, JustDeliverIt. And the Plaintiff has also pled that JustDeliverIt is a telephone company that specializes in the sending of a specific type of telephone service, the sending of prerecorded message calls, exactly of the type that Plaintiff alleges that he received. For that matter, JustDeliverIt has agreed to provide a declaration stating, among other things, that Defendant Clear Lead became a JDI customer in September 2024, and used JDI's services until June 2025, that JustDeliverIt never provided Clear Lead with any content to use in its calls or messages, and further that they are a self-service telephone company through which its customers can make and receive calls to numbers they must provide with call content they must provide.

In essence, Defendant adopts the classic "we didn't do it" defense by disguising it as a challenge to the Plaintiff's allegations of direct liability at the pleadings stage. But Rule 12(b)(6)

is not an appropriate device for testing the truth of what is asserted in the complaint or for determining whether the plaintiff has any evidence to back up what is in the complaint. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002). However, that's precisely what the Defendant attempts to do here, making a red-herring argument that the Plaintiff has failed to state a claim because he has allegedly failed to set forth facts giving rise to direct liability that the Defendants placed the calls at issue. But that's a "red herring" that begs the question "who did, then?" *See Consol. Grain & Barge, Inc. v. Anny*, No. CIV.A. 11-2204, 2013 WL 486687, at *6 (E.D. La. Feb. 6, 2013). Nevertheless, the Plaintiff has met his burden of pleading facts sufficient to give rise to the inference that the Defendants placed the illegal calls at issue here.

Direct TCPA liability attaches to an entity that "initiates" the call, that is, the entity that either takes the necessary steps to physically place it or is "so involved in" the placement that it essentially made the call itself. *Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765, 771 (N.D. Ill. 2014). Taking the well-pleaded facts as true, the Amended Complaint alleges that the Plaintiff received a prerecorded telemarketing voicemail from the -27 number, the message instructed a return call to the -69 number, that a subpoena to JustDeliverIt revealed moving defendant Clear Lead's subscription to the -27 number, and that both numbers listed clearcredit.ai email addresses, which such domain traces back to both moving Defendants. The Amended Complaint also alleges the contents of the investigative call, including the use of that same domain name. Those facts, pled with specificity and partially based on the subpoena records the complaint expressly relies on, permits the straightforward inference that the moving Defendants procured and used the lines and initiated the prerecorded call promoting their own services. That is all that is required at the pleadings stage.

Defendants attempt to argue away this clear subpoena response by arguing that the call "came from JustDeliverIt." Their brief even misquotes the number as "701-410-3027" while asserting the FAC "specifically alleges" that non-party JustDeliverIt used the outbound number and that "neither Haider nor Clear Lead use the outbound number." That is a blatantly false mischaracterization of the Plaintiff's pleading. The complaint pleads that JustDeliverIt is "a system that is used to send prerecorded messages," i.e., the telephone company, and alleges Haider subscribed and signed up the accounts used for the outbound and callback numbers, under the "clearsolution.ai" domain and using moving Defendant Clear Lead's name in the case of the number that placed the call. (Compl. ¶ 23, 22, 25). The phone company supplies the telephone services and transmission facilities; the subscriber initiates the call.

This pleading is akin to the Plaintiff pleading that the Plaintiff received a call from a telephone number serviced by T-Mobile that when answered resulted in the Plaintiff speaking with "John Doe", sending a subpoena to T-Mobile, and then finding out that the telephone number is a cell phone that is, in fact, subscribed to by John Doe. Given that a subpoena to the telephone company, a telephone company which provides the exact type of phone services the Plaintiff alleges were used, no less, show that a moving Defendant subscribed to that number, there is no more reasonable inference than that the moving Defendant directly placed the subject call. Simply put, if someone gets a call from "John Doe," and a subpoena response identifies "John Doe" as the subscriber of the phone number, it's reasonable to assume that "John Doe" placed the call. As another Court has explained, "After all, when a person introduces herself across the table as Olivia or Emma --- we generally conclude without much hesitation that is indeed who he is. So too as to the December 8 call. The caller allegedly introduced herself as 'Erica ... from [the Defendant].' Why then would it not be plausible to conclude that he was, in

fact, 'Erica ... from [the Defendant]'?" *Bradshaw v. CHW Grp., Inc.*, --- F. Supp. 3d ----, 2025 WL 306783, at *3 (D.N.J. Jan. 24, 2025).

To this end, the moving Defendants' seeming obsession with JustDeliverIt seems to rely on a fundamental misapprehension of both the Plaintiff's pleading and the nature of JustDeliverIt's business. JustDeliverIt does not sell goods or services like debt relief services; moving Defendants do. All JustDeliverIt sells is phone service. In other words, JustDeliverIt has no role in determining who any given JustDeliverIt customer (like Clear Lead) calls or what the JustDeliverIt customer says on any given call. It is a phone company, full stop. Thus, JustDeliverIt did not place, and Plaintiff does not allege that JustDeliverIt placed, any calls to the Plaintiff. Just like T-Mobile, a phone company like JustDeliverIt does not "send" calls except in a strictly literal sense in that they provide the connection and phone service to allow their customers, like moving Defendant Clear Lead, to place the calls at issue.

Simply put, the Amended Complaint clears the bar at the pleadings stage because it alleges a cohesive marketing scheme involving both the moving and nonmoving Defendants with concrete records that link all Defendants to the numbers used, the representations on the calls, and the website domains and corporate identities used. The connections pled cannot be mere happenstance; the apparent intermixing of the Defendants' information and involvement gives rise to the inference of direct involvement of each Defendant at the pleadings stage. Discovery will further reveal the precise nature of each Defendant's involvement and conduct.

These are precisely the kind of connect-the-dots pleading and allegations that courts find sufficient to infer direct initiation at the pleading stage. For example, in *VanderSloot v. Charles Baratta LLC*, the Eastern District of New York considered a similar motion in which the defendant claimed that the Plaintiff insufficiently connected "at least 69 calls" to the Defendant,

based on a complicated web of connections that the Court used a chart in order to decipher, including the use of multiple telephone numbers and ultimately an email from an individual with an email at the Defendant's email address. *VanderSloot v. Charles Baratta LLC*, No. 24-CV-07096 (JMW), 2025 WL 1898929, at *2 (E.D.N.Y. July 9, 2025). In *VanderSloot*, the court held that the plaintiff in the sufficiently "connect[ed] the dots to demonstrate how "DeAndre," "Tiffany," Christopher Garcia and "Legal Helpers" are connected to Prime, thereby bolstering Plaintiff's theory of direct liability." *Id.* at *6. In so holding, the Court pointed to specific record evidence connecting the calls at issue and the entities that placed them to the defendants, including, as here, the defendant's sharing of telephone numbers used by multiple individuals, the apparent information sharing involved, as well as the sharing and providing of the defendant's email address domain name. *Id.* In doing so, the Court held that those allegations and connections "effectively connect[ed] the dots between the phone numbers and "fictitious" individuals and how they trace back to Defendant Prime." *Id.* at *8.

For that matter, and against the specious contention that JustDeliverIt sent the calls at issue, *VanderSloot* also counsels that linking the callback and brand identity to the defendant, including through the use of an email address, as here, is sufficient to infer that the defendant is "in some manner responsible" for initiating the calls. *Id.* Defendants argue that neither Clear Lead nor Manzoor was "mentioned on the call," and that the voicemail used the fake name "Total Relief Services." But the Amended Complaint ties the subpoena responses, the return path, and follow-up communications all to Defendants,' their information, and website domain. *VanderSloot* is squarely on point in this respect where such information is used to identify the initiator when prerecorded calls conceal the seller's identity: the court looked to what the callback path and subsequent communications revealed about who owned and controlled the

9

number and benefited from the message, and held those allegations sufficed at the pleadings stage. Defendants also fixate on the complaint's recognition that the precise "delineation" between the four interrelated entities will be clarified with discovery. That is not a pleading defect. It is the natural consequence of uncovering a concealed caller through early subpoenas and tracing, again, the approach that the *VanderSloot* court endorsed in denying dismissal. *Id.* at *6, *9.

So too here. The Amended Complaint alleges precisely the same type of identity across names and methods of communication to give rise to the Defendants' direct involvement in the conduct at issue here. Stretching through this conduct, as in *VanderSloot*, is a single domain name, clearcredit.ai, which just so happens to have been registered to both moving Defendants shortly before the record was scrubbed and changed as a result of this lawsuit. Moreover, the Plaintiff has learned from the carrier that the very number that robocalled plaintiff is subscribed to (and used in) the moving defendant's Clear Lead's account. That plausibly alleges that Defendants "initiated" the call. *See Smith*, 30 F. Supp. 3d at 771-72. Nor does the presence of a telecom intermediary, JustDeliverIt, defeat plausibility. The Amended Complaint alleges JustDeliverIt is simply the phone company and not the seller of the debt relief services advertised in the call. Defendants are. That is fully consistent with direct liability when the factual tie runs from the telephone number that called Plaintiff and the subsequent communications to the defendant itself. *See VanderSloot*, 2025 WL 1898929, at *8–*9

As the Court noted in *VanderSloot*, the cases that have dismissed direct liability claims, including some of those cited by the moving Defendants here, do not compel a contrary conclusion. At this nascent stage of a motion to dismiss, it is not the Court's function to resolve factual issues, nor is it Plaintiff's burden to "come forward with allegations or evidence

10

conclusively negating the possibility" that Defendant did not initiate the calls or messages at issue. *Bank v. CreditGuard of Am.*, No. 18CV1311PKCRLM, 2019 WL 1316966, at *8 (E.D.N.Y. Mar. 22, 2019); *Morris v. SolarCity Corp.*, No. 15-CV-05107-RS, 2016 WL 1359378, at *2 (N.D. Cal. Apr. 6, 2016).

To this end, Defendant's cited authorities are inapposite. Defendants cite *Bennett v. Celtic Insurance Co.* for the proposition that a defendant "initiates" a call only if it physically places it or is "so involved" that it essentially made it. True, but that's exactly the inference that the JustDeliverIt subpoena response provides. The *Bennett* court dismissed because the plaintiff there did not plausibly link the callers or call path to the defendant: "her allegations do not demonstrate that Celtic was 'so involved'" in the calls and did not link Celtic's individual agents to the calls she received, particularly as "[s]he never spoke to either of them and does not allege any connection between them and the live operators with whom she spoke." 2022 WL 865837, at *3. Here, by contract, the Amended Complaint pleads specific links to the subject calling conduct. With respect to Clear Lead, it pleads that the number that called the Plaintiff was registered in Clear Lead's name. And with respect to Manzoor, it pleads that he was the personal registrant of the domain name used in each telephone number at issue, as well as the very email from which Plaintiff received an email as a result of the illegal calls. Those allegations are materially stronger than in *Bennett* and mirror what *VanderSloot* deemed sufficient at the pleadings stage, namely, shared numbers, a path back to the defendant, and an email at the defendant's domain, all of which collectively "raise[d] a plausible inference" that the defendant "initiated the calls and messages." 2025 WL 1898929, at *8.

Similarly, the court in *Warciak v. Subway Restaurants, Inc.*, affirmed the dismissal on appeal because the plaintiff there attempted to sue Subway for text messages sent by T-Mobile as

part of a customer appreciation promotion offering a free sandwich. There, plaintiff's theory itself pinned the calling on a third party app and not Subway, and, unsurprisingly, direct liability as against Subway failed. 949 F.3d 354, 356-57 (7th Cir. 2020). In other words, the court dismissed that case for doing exactly what Defendants here claim the Plaintiff should have done: sued JustDeliverIt, and not Defendants, who actually used JustDeliverIt's services. And in *Smith*, 30 F. Supp. 3d at 771, Court rejected direct liability as against State Farm because "There is no question that Variable—not Defendants—physically placed the allegedly unlawful telemarketing calls at issue. Here, the Amended Complaint alleges Defendants' telephone account and domain were used to subscribe and operate the very numbers at issue, supporting an inference of initiation. And just as in *Smith*, in *Vessal*, the court found no direct liability where independent third-party dealers, not the defendant, allegedly placed the calls. *Vessal v. Alarm.com*, No. 17 C 2188, 2017 WL 4682736, at *1 (N.D. Ill. Oct. 18, 2017).The Amended Complaint here does not allege, let alone lead to any inference of "dealers." Rather, it alleges Defendants' own numbers, domain, and communications.

The Plaintiff's complaint gives more than adequate notice of the Plaintiff's claims and the grounds upon which they rest. The Defendants' "we didn't do it" argument is more properly the subject of a jury trial or at the very least a motion for summary judgment. These details surrounding the calls are more than sufficient to put Defendants on notice of the claim being asserted and the Defendants' own account sign ups, which they are in the best position to explain why their names appear on the critical evidence in this case. For all intents and purposes, Defendant now attempts a smoke-and-mirrors game of purported deficiencies in the complaint in an ill-contrived effort to escape liability under the TCPA.

A litany of other courts has agreed and applied nearly identical reasoning in applying direct liability to such circumstances even more far removed than those here, such as where goods are sold through brokerages or multiple parties are involved in the sales process. *See, e.g.*, *Cunningham v. Wallace & Graham*, No. 1:24-CV-00221, 2024 WL 4826798, at *3 (M.D.N.C. Nov. 19, 2024) ("The complaint alleges that Sokolove partnered with Wallace & Graham to solicit Camp Lejeune claimants through telemarketing efforts and that Wallace & Graham and Rhine Law Firm were both signatories of the proposed retainer agreement sent to Cunningham after the calls. These allegations, which must be accepted as true, provide a sufficient basis for 'draw[ing] the reasonable inference that the defendant[s] [are] liable for the misconduct alleged.'"); *Bumpus v. Realogy Brokerage Grp. LLC*, No. 3:19-CV-03309-JD, 2022 WL 867256, at *7 (N.D. Cal. Mar. 23, 2022) (certifying TCPA class against brokerage for actions of purportedly independent agents); *Chinitz v. Intero Real Est. Servs.*, No. 18-CV-05623-BLF, 2021 WL 1375837, at *5 (N.D. Cal. Apr. 12, 2021) ("The Court finds that Defendant is vicariously liable for calls made by its corporate sales associates and agents based on apparent authority."); *McMorrow v. Core Properties, LLC*, No. 4:23-CV-00126-JAR, 2023 WL 8697795, at *13 (E.D. Mo. Dec. 15, 2023) ("[T]he Court finds that Plaintiff has established that Core Properties provided apparent authority to 1000 CAD to send the text messages to Plaintiff."); *Hayhurst v. Keller Williams Realty, Inc.*, No. 1:19CV657, 2020 WL 4208046, at *6 (M.D.N.C. July 22, 2020) ("At this stage of the proceedings, Hayhurst has sufficiently alleged an agency relationship between Keller Williams and the individuals who called him.").

Although it is true that the Plaintiff must allege either a direct or vicarious liability theory of TCPA liability, the bar for the Plaintiff is not as high as the Defendant makes out. As the

District of Colorado recently held in a case in which Defendant made a similar motion to

dismiss, based on, as here, calling back a number listed on a voicemail:

> Alleviate is right about the legal requirement, but wrong that the complaint is insufficient to satisfy it at the motion-to-dismiss stage. The complaint alleges that Mr. Scofield received a call and a resulting voicemail that urged him to call a number, and that the person who answered that number identified "his company" as Alleviate. Doc. 1 ¶¶ 22-27. Taking these allegations as true, as I must at this stage, and making all reasonable inferences in favor of Mr. Scofield, as I also must at this stage, this is sufficient to allow a reasonable juror to infer that Alleviate was responsible for—that is, made or initiated—the call.

> It may be true, as Alleviate argues, that it was not actually behind the call. Perhaps the person who answered the call was mistaken or lied about who he was working for; perhaps Mr. Scofield's account of the call is inaccurate; perhaps some other company paid for a call that was attributed to Alleviate. Those are all possibilities. If Alleviate can show that one of them is true, and that it did not actually cause the call to be made, it can win the case. And if, as Alleviate contends, the plaintiff cannot find any evidence to support his assertion that Alleviate is associated with the phone numbers or phone calls, then it can also win the case. But those are material factual disputes that cannot be resolved at this stage, at least without converting the motion to one for summary judgment. *See* Fed. R. Civ. P 12(d).

> Even if it were proper to consider Alleviate's argument that it is not connected to the number that appeared on Mr. Scofield's caller ID, that would not change the outcome. Phone numbers are easily spoofed, and making a call appear to come from a number other than the one belonging to the actual caller is hardly unheard-of, especially in the robocalling world. Likewise, the argument that there is nothing to support the claim that the call was made by an agent of Alleviate is unpersuasive. The allegation is that the person who answered the number left in the robocall's voicemail said that he was doing so on Alleviate's behalf. Mr. Scofield may be unable to prove that down the road, but for now that is not his burden. He has plausibly alleged it, and that is sufficient to defeat a motion to dismiss. *See Iqbal*, 556 U.S. at 678 (plaintiff clears "the line between possibility and plausibility" if he "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

*Scofield v. Alleviate Tax LLC*, No. 1:24-cv-03231-DDD-KAS, ECF No. 42 (D. Colo. Sep. 18,

2025) (citing *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1214 (10th Cir. 2007)).

In essence, the Defendant prefers to spin a narrative of its own by ignoring the facts

Plaintiff has pled and then attempting to shoehorn that faulty narrative into other plainly

distinguishable cases that it mischaracterizes. Defendant here advances the same faulty legal

14

standard as the defendants in *VanderSloot* and *Scofield*, reasoning that the Plaintiff's well-pled allegations are insufficient to demonstrate a theory of liability, in this case direct liability, at the pleadings stage. If the Defendant has some contrary evidence showing it did not place the calls at issue or some other reason for why it should not be liable, it should present that evidence at trial. The solution is not to resolve what is at best a merits dispute at the pleadings stage.

Plaintiff has unquestionably pled a direct liability claim for relief under the TCPA because he has pled sufficient facts to allege that Defendants directly placed the calls at issue. Defendants cannot defeat that plausible inference using speculation, for there is no inquiry without a starting point, and the starting points must be accepted as known in some sense, even if they are not known in the strictest sense. To attempt to doubt these starting points at the outset would prevent any inquiry from proceeding. Should this Court at all find the Plaintiff's pleading at all deficient, the Court only need give the order granting the Plaintiff leave to amend and he will do so to rectify any perceived deficiency.

## V.    CONCLUSION

This Court must deny Defendants' motion to dismiss in its entirety. Alternatively, to the extent that the Court finds that additional questions remain, it should permit the Plaintiff to amend to correct the deficiencies as necessary.

Dated: September 22, 2025

<div style="margin-left:40%">

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

</div>

**<u>CERTIFICATE OF SERVICE</u>**

I certify that I filed the foregoing via ECF on the below date, which will automatically

send a copy to all attorneys of record on the case.


September 26, 2025

<div style="margin-left: 40%;">

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

</div>