UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **JORGE ROJAS,** on behalf of himself and all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**CLEAR CREDIT AI, LLC,**<br><br>**CLEAR LEAD SOLUTIONS CORP.,**<br><br>**AND**<br><br>**SAJEEL MANZOOR**<br><br>*Defendants*. | Civil Case No.:<br><br>25-CV-01056 |

## SECOND AMENDED CLASS ACTION COMPLAINT

### INTRODUCTION

1. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2. The Plaintiff alleges that Clear Credit AI, LLC ("Clear Credit"), Clear Lead Solutions Corp. ("Clear Lead"), as well as their owner, Defendant Manzoor, made unsolicited

1

pre-recorded telemarketing calls to his cellular telephone number as well as those of putative class members.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

4. This Court has jurisdiction over Clear Credit, Clear Lead, and Manzoor because they (1) made the telemarketing calls at issue from this District, and (2) conduct business transactions in this District.

5. Venue is proper in this District because the calls were directed into this District.

## PARTIES

6. Plaintiff Jorge Rojas ("Mr. Rojas") is, and at all times mentioned herein was, a citizen and resident of Dupage County.

7. Mr. Rojas is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

8. Defendant Clear Credit AI, LLC is a Washington corporation whose services were promoted on the calls.

9. Defendant Clear Lead Solutions Corp. is a Delaware corporation that makes telemarketing calls into this District, and which made the call described in the Complaint.

10. Defendant Sajeel Manzoor is an owner of Defendant Clear Credit and Clear Lead and that was listed as the responsible entity on the website domain from which the Plaintiff received a retainer agreement as a result of the calls at issue.

## TCPA BACKGROUND

11. In 1991, Congress enacted the TCPA to regulate the explosive growth of the

telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[,]" and found that federal legislation was needed because "telemarketers [could] evade [state-law] prohibitions through interstate operations.'" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (citations omitted).

12. The TCPA regulates, among other things, the use of a pre-recorded message to make calls or send pre-recorded calls. *See* 47 U.S.C. § 227, *et seq.*; *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

13. Specifically, the TCPA prohibits the use of a pre-recorded message to a wireless number in the absence of an emergency or the prior express written consent of the called party. *See* 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(2); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1831 (F.C.C. 2012).

14. "[T]elemarketing means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12).

15. "[P]rior express written consent means an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8).

**FACTUAL ALLEGATIONS**

**Plaintiff Rojas's Allegations**

16. Plaintiff's telephone number is (424) 219-XXXX.

17. That number is assigned to a cellular telephone service.

18. The Plaintiff never consented to receive telemarketing calls from the Defendants.

19. The Plaintiff never did any business with the Defendants.

20. Despite that, Defendant Clear Lead made pre-recorded telemarketing calls to the Plaintiff on at least January 14, 2025 from the telephone number 719-410-3027.

21. A subpoena, the response to which is attached herein as Exhibit A, has revealed that the "Customer's Legal Name" for the account with the telephone number at issue is "Clear Lead Solutions Corp," and that the signatory on the account, including "Legal Compliance Contact," is former Defendant Sajjad Haider.

22. Moreover, that telephone number, 719-410-3027, is serviced by a service called JustDeliverIt, which is a system that is used to send prerecorded messages, including to voicemail services, just as the call Plaintiff received.

23. Plaintiff issued a follow up subpoena to JustDeliverIt, for the subject calling records. Those calling records reflect that the call at issue was sent from the aforementioned JustDeliverIt account (Exhibit B):



24. As the subject call was sent from Defendant Clear Lead's JustDeliverIt Account, it is plausible to infer that the messages were physically and directly sent by Defendant Clear Lead, who "became a JDI customer in September 2024, and used JDI's services until June 2025" and

4

the account was "applied for and accessed solely through Mr. Sajjad Haider." (Exhibit C). Although JustDeliverIt is prepared to attest to the same in a sworn declaration, the declaration could not be seasonably obtained in time for the filing of this Amended Complaint.

25. There exist no facts which support that any other person or entity had access to, let alone unauthorized access to, Clear Lead's JustDeliverIt account. For that matter, it would make no sense why, for instance, a third party or hacker would access the JustDeliverIt account, only to send messages which link back to Clear Lead, including through the email domain provided on the call, which is the same email domain used to sign up for the JustDeliverIt account.

26. Moreover, the report identifies two IP addresses used to access JustDeliverIt's services. It is believed and therefore averred that these IP addresses will trace back to either former Defendant Haider or Defendant Clear Lead.

27. The call left the following pre-recorded message:

Total Relief Services is making a final attempt to contact you about a $48,000…this fund can be utilized…if you wish to apply for this emergency relief, please call 754-732-1169.

28. "Total Relief Services" is an alias used by the Defendants to hide their involvement in the subject calling conduct, and is not a cognizable legal entity. It is simply an illegal, unregistered, fictitious name, and cannot be relied upon to identify who placed the call.

29. This arrangement is common in illegal lead generation where an illegal telemarketer will deliberately use a generic, fake name on the calls it sends out to prevent a casual observer from ascertaining from whom the calls were made, and thus to avoid ill will for the underlying actual brand, as well as to make identification for legal purposes more difficult. Defendants do this, despite that conduct itself being illegal under the TCPA.

30. To that extent, the phone records and phone company testimony do not lie, and those records clearly establish that they were sent from Defendant Clear Lead's account.

31. The 754-732-1169 number is serviced by a different telephone service provider, RingCentral. A subpoena to RingCentral for the ownership of that number revealed that the customer associated with that phone number is *also* former Defendant Sajjad Haider, who signed up for the account personally, and as a responsible entity, but this time in the name of Defendant Clear Credit AI, LLC, but also with a domain name of "clearsolution.ai," as reflected in Exhibit D. The address provided by Mr. Haider on this account was Mr. Manzoor's address, 1400 112th Ave SE, Bellevue, Washington 98004.

32. These foregoing facts show that, although Defendant Clear Lead was the entity that physically placed the call, as it was sent from Defendant Clear Lead's JustDeliverIt account, to which only Mr. Haider had access, it did so at the direction, and for the benefit of, Defendants Clear Credit, whose callback telephone number was transmitted on the call, and Defendant Manzoor, whose address was provided for the RingCentral account.

33. Based upon this information and common involvement of parties and ownership, including the sharing of physical addresses and domain names, the Plaintiff believes and therefore avers that there is some connection between the vicariously liable Defendants, and the Defendant alleged to have physically placed the call, Defendant Clear Lead.

34. However, the Plaintiff does not know the precise nature of or delineation of the relationship between the entities involved. As best Plaintiff can ascertain, both companies share common ownership, but Clear Lead Solutions Corp. appears to be the illegal telemarketing arm, as the entity who sent the calls, and Defendant Clear Credit AI, LLC appears to be the actual company whose services are promoted, as the company whose services were promoted, as more fully described below.

35. To be clear, Plaintiff pleads direct liability against Defendant Clear Lead, as the

initiator of the subject calls, and vicarious liability against Defendants Clear Credit and Manzoor, for directing and controlling the calls to be made.

36. The call was clearly pre-recorded because (a) the voice sounded like a robot (b) there was a delay prior to the message being played.

37. Moreover, JustDeliverIt's service is designed to send prerecorded messages provided by its customers. (Exhibit C).

38. Mr. Rojas called back 754-732-1169, the number the prerecorded message told him to call.

39. On that call, Mr. Rojas was provided with the website, https://clearsolution.ai. This is the same website domain associated with email addresses used to sign up for the accounts with both JustDeliverIt and RingCentral.

40. Indeed, Mr. Rojas received an e-mail with paperwork regarding the debt solutions offering sold by the Defendant Clear Credit from an e-mail address jerome.k@clearsolution.ai.

41. At the time of the alleged calls, the domain name "clearsolution.ai" had WHOIS information naming Defendant Manzoor, as reflected through a subpoena response from the website domain provider, Hostinger. (Exhibit E).

42. Shortly after this complaint was filed and served on Mr. Manzoor, that information was changed to an individual named "Basit Malik," which is, upon information and belief, a fictitious name.

43. However, the IP address associated with the initial purchase of the website, and the IP address that accessed the website's management portal as recently as May 2, 2025, is 67.183.211.64. Upon information and belief, this is Mr. Manzoor's IP address.

44. A subpoena to Comcast, the servicer of this IP address, will definitively reveal who

owns it. However, it should be noted that the IP address geolocates to Bellvue, Washington, where Defendant Manzoor resides.

45. Indeed, the RingCentral subpoena for the 754-732-1169 number is the address 1400 112th Ave SE, Bellevue, Washington 98004, which is Defendant Manzoor's address.

46. Defendant Manzoor personally participated the calls complained of herein, and in an attempt to sell debt relief products and services, evidently under the Clear Credit AI, LLC brand, but marketed using Clear Lead Solutions Corp, the corporate entity that Plaintiff alleges physically placed the calls.

47. Defendant Manzoor may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, *inter alia*: "[T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user *as well as of that person*." 47 U.S.C. § 217 (emphasis added). Manzoor is thus vicariously personally liable as the controlling owner and director of the illegal calling conduct directly made by Clear Lead.

48. With particular respect to Manzoor, Manzoor personally committed the TCPA-violative conduct at issue when he signed up for the website domain names: used on the call, used to sign up for the JustDeliverIt service, and used to sign up for the RingCentral account, as well as the very same domain name mentioned on the calls and from which the Plaintiff received an email, as well as using his physical address in connection with Mr. Haider's RingCentral signup.

49. Indeed, Defendant Manzoor's apparent involvement in the telephony and domain setup plus concealment lead to the inference that he was significantly involved in the subject calls. And his domain name used to sign up for both services, and physical address used to sign up for another service lends credence to the fact that he personally knew of and directed the calling conduct.

8

50. Moreover, in an evidently deliberate attempt to hide his involvement in the conduct at issue, Manzoor deleted the WHOIS information on the website and changed it to a fictitious name shortly after he was served with the lawsuit in this litigation, in March.

51. The foregoing facts demonstrate that Manzoor had direct, personal knowledge of and participation in the conduct and course of conduct complained of which violated the TCPA, including by spoliating evidence of website and telephone number ownership.

52. Indeed, all the indicia of the call indicate that Clear Lead took the steps necessary to physically place the call and thus physically placed the call.

53. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

54. In 2008, the FCC likewise held that a company on whose behalf a telephone call is made also bears the responsibility for any violations.

55. The FCC has instructed that sellers such as Clear Credit may not avoid liability by hiding behind third party agents and outsourcing telemarketing to third parties, such Clear Lead:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC* 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnotes and alteration marks omitted).

56. In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." Id. at 6574 ¶ 1.

57. Clear Credit and Manzoor are liable for Defendant Clear Lead's conduct and telemarketing calls placed by Clear Lead and transferred to Clear Credit and its agents to generate customers for Clear Credit and its agents, including the Plaintiff.

58. Defendant Clear Credit is vicariously liable for Clear Lead's conduct because, when the number is called back, the caller is connected with representatives of Clear Credit.

59. The use of Clear Credit's brand name on the call and Manzoor's website domain and physical address lends support to the plausible inference that Clear Credit and Manzoor controlled Clear Lead's calling conduct.

60. To this end, these facts, including the attempts to spoliate evidence of their involvement during the pendency of this litigation, also demonstrates that Clear Credit and Manzoor had full knowledge of Clear Lead's illegal conduct, and did not terminate or discipline Clear Lead, thus implicitly ratifying Clear Lead's actions and endorsing Clear Lead's illegal behavior.

61. Indeed, it is believed and therefore averred that Defendant Manzoor personally approved the use of his name and address information, including the website that he created, to sign up for the telephone services involved in the illegal calls, thus further demonstrating knowledge and participation in the subject calling conduct.

62. Clear Credit was interested in hiring a lead generator that could make phone calls to potential customers *en masse* using a fake name and prerecorded messaging to hide its identity and direct only potentially interested ones to call them.

63. To do so, Clear Credit hired and directed Clear Lead to orchestrate an *en masse* telemarketing campaign using prerecorded messages using the fake alias "Total Relief Services."

64. Indeed, Clear Credit's relationship with Defendant Clear Lead contains numerous hallmarks of agency, including the sharing of common ownership and addresses.

65. As such, Clear Credit controlled the content of Clear Lead's telemarketing.

66. Finally, Clear Credit could have terminated Clear Lead.

67. It did not.

68. A reasonable seller like Clear Credit whose agents are making calls would investigate into the reasons why their agents and telemarketers would be calling cellular telephone numbers using highly-illegal prerecorded messages without consent.

69. It did not.

70. Clear Credit hired Clear Lead without a proper investigation and did not terminate them when they were informed of Clear Lead's illegal calling conduct.

71. As such, they knowingly ratified Clear Lead's conduct.

72. Clear Credit accepted the Plaintiff's lead and then utilized it for a benefit by continuing to promote its services to him.

73. The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such

11

information." In re DISH Network, 28 FCC Rcd. 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." Id. at 6593 ¶ 46.

74. Discovery is thus necessary to flesh out the particular and exact nature of the parties' relationship, but the facts as pled here are more than sufficient to lead to the plausible inference of direct liability as against Clear Lead as the evident initiator of the calls and vicarious liability as against Clear Credit and Manzoor as evident controllers of the conduct.

75. The Plaintiff and putative class members were harmed by these unwanted calls.

## Class Action Allegations

76. As authorized by Rule 23(b)(2) or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of classes of all other persons or entities similarly situated throughout the United States.

77. The class of persons Plaintiff propose to represent is tentatively defined as:

> **TCPA Pre-recorded Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendants, or an agent calling on behalf of the Defendants, called on their cellular telephone number (2) using the same or a substantially similar artificial or pre-recorded voice message used to call Plaintiff

This is referred to as the "Class".

78. Excluded from the Class are counsel, the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

12

Case: 1:25-cv-01056 Document #: 58 Filed: 11/25/25 Page 13 of 15 PageID #:271

79. The Class as defined above are identifiable through phone records and phone number databases.

80. The potential members of the Class number at least in the thousands.

81. Individual joinder of these persons is impracticable.

82. There are questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

    (a) whether Defendants systematically made pre-recorded calls to class members;

    (b) whether Defendants made calls to Plaintiff and members of the Class without first obtaining prior express written consent to make the calls;

    (c) whether Defendants' conduct constitutes a violation of the TCPA; and

    (d) whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

83. Plaintiff's claims are typical of the claims of members of the Class.

84. Plaintiff are an adequate representative of the Class because her interests do not conflict with the interests of the Class, he will fairly and adequately protect the interests of the Class, and he will be represented by counsel skilled and experienced in class actions, including TCPA class actions.

85. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

13

86. The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the TCPA Pre-recorded Class)**

87. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

88. Defendants and/or their agents transmitted unwanted telephone calls to Plaintiff and the other members of the TCPA Pre-recorded No Consent Class using a pre-recorded voice message.

89. These pre-recorded voice calls were made *en masse* without the prior express written consent of the Plaintiff and the other members of the TCPA Pre-recorded Class.

90. The Defendants have, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendants' conduct, Plaintiff and the other members of the TCPA Pre-recorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

    A.    Certification of the proposed Class;

    B.    Appointment of Plaintiff as representative of the Class;

    C.    Appointment of the undersigned counsel as counsel for the Class;

  D. A declaration that Defendants and/or their affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

  E. An award to Plaintiff and the Class of damages, as allowed by law; and

  F. Orders granting such other and further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: November 25, 2025

        */s/ Andrew Roman Perrong*
        Andrew Roman Perrong, Esq.
        Perrong Law LLC
        2657 Mount Carmel Avenue
        Glenside, Pennsylvania 19038
        Phone: 215-225-5529 (CALL-LAW)
        Facsimile: 888-329-0305
        a@perronglaw.com

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

November 25, 2025

        */s/ Andrew Roman Perrong*
        Andrew Roman Perrong, Esq.
        Perrong Law LLC
        2657 Mount Carmel Avenue
        Glenside, Pennsylvania 19038
        Phone: 215-225-5529 (CALL-LAW)
        Facsimile: 888-329-0305
        a@perronglaw.com