IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JORGE ROJAS, on behalf of himself and all others similarly situated,<br><br>　　Plaintiff,<br><br>v.<br><br>CLEAR CREDIT AI, LLC, et al.<br><br>　　Defendants. | Case No.: 25-CV-01056 |

**PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS**

## I. Introduction

Plaintiff's Second Amended Complaint goes far beyond notice pleading by alleging specific facts sufficient to lead to the inference of direct liability as against Clear Lead and vicarious liability as against Clear Credit and Manzoor. But Defendants' latest motion to dismiss seeks to substitute notice pleading for an enhanced form of fact pleading and expects the Plaintiff to plead facts not currently within his knowledge, even after the limited discovery undertaken.

The Second Amended Complaint adequately pleads direct liability as against Clear Lead because it pleads, through facts confirmed through subpoena responses, that Clear Lead's account was used to place the calls at issue, and that that account was accessed through former Defendant Haider.[1] And it adequately pleads vicarious liability as against Clear Credit (who didn't even move to dismiss the first two claims against it) and Manzoor because it pleads facts which demonstrate that the calls were placed for Clear Credit's benefit based on multiple manifestations of agency. Defendants' motion should therefore be denied in its entirety.

## II. Factual Background

On January 14, 2025, Plaintiff received a prerecorded telemarketing voicemail from 719-410-3027 (the -27 number) to his cellular telephone. The Plaintiff pleads, and telephone records confirm, that this number was assigned to Defendant Clear Lead and that the subject call was placed through Defendant Clear Lead's account with JustDeliverIt, which had former Defendant Haider as the "legal compliance" contact for the account and the signatory for the telephony contract on behalf of Clear Lead. The message identified itself as the illegally and fictitiously named "Total Relief Services," claimed Plaintiff had a "fund" of "$48,000" available, and directed a return call to 754-732-1169 (the -69 number) "to apply for this emergency relief."

---

[1] Mr. Haider, who is believed to be one of Clear Lead's owners, is believed to reside in Pakistan and could not be served, so he was dismissed.

1

Plaintiff pleads, and telephone records likewise confirm, that the -69 number is registered to Defendant Clear Credit, which likewise had former Defendant Haider as the point of contact for the account, but with Defendant Manzoor's physical address.

Plaintiff alleges he had not consented to receive such calls. So, to identify who was calling him illegally and for no other reason, Plaintiff called back the -69 number the next day, as instructed. During that call, the Plaintiff was told that he was speaking with Clear Credit, and was sold credit repair services and received an e-mail with paperwork regarding the debt solutions offering sold by the Defendant Clear Credit from an e-mail address jerome.k@clearsolution.ai. During discovery in this action, as before, the Plaintiff served various subpoenas to various third parties and links in the telemarketing chain, including to JustDeliverIt, the telephone company for the -27 number, RingCentral, the telephone company for the -69 number, and Hostinger, the domain registrar for the clearsolution.ai domain name from which the Plaintiff received the subject email as a result of the illegal telemarketing call. The Second Amended Complaint outlines in detail the specific factual data in each subpoena response in sufficient detail to allow this Court to conclude that Clear Lead placed the calls as part of an agency relationship with Clear Credit and Manzoor, including the use of Mr. Manzoor's physical address and website domain registration. These allegations are plausible for liability.

The Defendants, including Clear Credit, who did not previously move to dismiss, have all moved to dismiss, claiming that these facts are insufficient to demonstrate direct liability as against them at the pleadings stage. In contrast to the First Amended Complaint, the Second Amended Complaint outlines in exacting detail the bases for liability as against each of the Defendants and the facts upon which both direct and vicarious liability are alleged. Given that the facts Plaintiff has pled are entitled to a presumption of truthfulness, and given that the

Plaintiff has outlined the factual assertions giving rise to liability in greater detail than his previous complaints, the motion ought to be denied. The facts simply demonstrate a dispute which is inappropriate for resolution at the pleadings stage.

### III. LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint that fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The Rules demand only a "short and plain statement" of the claim showing that the pleader is entitled to relief, in order to give defendant fair notice of what the claim is and the grounds upon which it rests, not detailed factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 678 (cleaned up).

In determining whether a claim is plausible, the court must "draw on its experience and common sense." *Id.* at 678. After identifying elements to set forth a claim and removing conclusory allegations, the Court must accept all well-pled factual allegations as true and determine if they give rise to relief. *Id.* A complaint may be dismissed only where it appears that there are not "enough facts to state a claim that is plausible on its face," not merely because the defendant proffers some contrary facts. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### IV. ARGUMENT

A. *The Plaintiff has alleged direct liability in far greater detail than in other similar cases. Courts have already determined those allegations sufficient to infer direct liability.*

As described above, the Court's analysis must begin and end with whether or not the Plaintiff has plausibly alleged the Defendants' involvement in the calls with sufficient specificity

3

to give rise to the inference of direct liability. Here, the Plaintiff has alleged that telephone company records confirm that the account used to place the subject call at issue actually placed the call at issue, and was Clear Lead's account for which Haider was the compliance contact and signatory purporting to bind Clear Lead in the account sign up documents. There is no clearer evidence of direct liability than phone records from a phone company confirming that the subject call was placed from an account in the Defendant's name. The logical inference from that fact is that the Defendant whose account it is, *Clear Lead, placed the call*. And when dealing with a company, the company obviously can only act through individuals who direct its activities, and that individual was former defendant Haider. Ownership of an account used to place the calls is more than sufficient for a holding of direct TCPA liability. Pleading the physical person placing calls on a company's behalf is not necessary for showing direct TCPA liability; if it was, no company could ever be sued in a TCPA action without pleading the employee responsible.

In essence, Defendant Clear Lead adopts the classic "we didn't do it" defense by disguising it as a challenge to the Plaintiff's allegations of direct liability at the pleadings stage. But Rule 12(b)(6) is not an appropriate device for testing the truth of what is asserted in the complaint or for determining whether the plaintiff has any evidence to back up what is in the complaint. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002). However, that's precisely what Clear Lead attempts to do here, making a conclusory, undeveloped argument that merely infers that someone else allegedly gained access to their telephone account and made the calls. But that's a "red herring" that begs the question "who did, then?" *See Consol. Grain & Barge, Inc. v. Anny*, No. CIV.A. 11-2204, 2013 WL 486687, at *6 (E.D. La. Feb. 6, 2013). Nevertheless, Plaintiff has met his burden of pleading facts sufficient to give rise to the inference that Clear Lead directly placed the illegal call at issue here because it was sent from its account.

Plaintiff's Second Amended Complaint addresses the issues the Court previously identified with holding Clear Lead directly liable by adding factual allegations and reasonable inferences from them not present in the First Amended Complaint. First, it plausibly alleges on face that Clear Lead made the call because it was sent from its JustDeliverIt account. Compl. ¶ 23, 24. It also addresses why the call advertised "Total Relief Services," Compl. ¶ 28, 29. To be clear, there is no company named "Total Relief Services." That says nothing of who made the call; it's simply a fake name used to hide the source of the call as coming from Clear Lead and sent for Clear Credit's benefit, as evidenced from Plaintiff's subsequent investigation by calling the number for "Total Relief Services" and speaking with a Clear Credit representative who sold Clear Credit's services. Nor is requiring the caller be named at the outset of an illegal call the standard for demonstrating direct liability. If it was, any company could effectively evade TCPA liability by using a fake name on the call until they were ready to make a sale. The complaint also alleges that Clear Lead is a lead generator who generates customers for Clear Credit by making phone calls "to potential customers *en masse* using a fake name and prerecorded messaging to hide its identity and direct only potentially interested ones to call them." Compl. ¶ 28, 62. Plaintiff also alleges that "Clear Credit hired and directed Clear Lead to orchestrate an *en masse* telemarketing campaign" that told people to call Clead Credit's number. Compl. ¶ 63, 32.

Is it conceivably possible that someone else could have used Clear Lead's account to send the subject call, all without Clear Lead's knowledge or approval? Certainly, the same way it is possible that someone could have stolen someone else's phone and used it to call in a threat. But it is likewise an assumption most reasonable that a telephone call coming from a particular number was placed by that number's subscriber. The Court previously held that the operative question is *who used the service to make the call*. The amendment cures this defect. It alleges the

call was transmitted through Clear Lead's JustDeliverIt account and that the account was accessed exclusively through Haider, Clear Lead's designated signatory for the account. Under the Court's own framing that "the user of JustDeliverIt 'makes' a call using the JustDeliverIt service," these allegations plausibly plead that Clear Lead made the call. The plausible allegations of direct liability here show that this case survives at the pleadings stage, because the Plaintiff has alleged that former defendant Haider was the individual who exclusively accessed Clear Lead's account, purported to have contractual signatory authority for Clear Lead to JustDeliverIt, and thus physically placed the call from Clear Lead's account using JustDeliverIt's services. If Defendant has facts or evidence to back up its unauthorized use theory, those can be adjudicated at a trial or possibly summary judgment, not now, where the Plaintiff has pled that Clear Lead sent the calls because they were sent from Clear Lead's telephone account. That allegation is entitled to a presumption of truthfulness at this stage.

The Plaintiff's complaint gives more than adequate notice of the Plaintiff's claims and the grounds upon which they rest. The Plaintiff has identified the *specific call* he alleges violated the TCPA in *Defendant's own telephone records*. This is sufficient. For example, in *Bird v. Pro Star Builders, Inc.*, No. 222CV03610JLSJEM, 2022 WL 18216007, at *3 (C.D. Cal. Nov. 28, 2022) (cleaned up) (emphasis added), which itself cited to other similar decisions, the court held:

> Further, it is reasonable to infer that Pro Star was responsible for the alleged February 24 unanswered call from the same number as the second call on April 19. Indeed, courts in other districts have recently found that a plaintiff has sufficiently alleged multiple calls from the same entity when he or she received more than one call from the same number but traced the calls back to the defendant after having answered only once. *See, e.g., Chapman v. Nat'l Health Plans & Benefits Agency, LLC*, 2022 U.S. Dist. LEXIS 138916, 2022 WL 3130225, at *7 (E.D. Mich. Aug. 4, 2022) (finding that plaintiff plausibly pleaded that four calls—including three unanswered calls—had come from the same defendant because they had originated from the same number and the plaintiff alleged that other individuals had complained about receiving solicitations from that number); *Spurlark v. Dimension Serv. Corp.*, 2022 U.S. Dist. LEXIS 120468, 2022 WL 2528098, at *3 (S.D. Ohio July 7, 2022) (finding that plaintiff who had ignored multiple calls from the same number until he

6

answered and was able to identify the caller plausibly pleaded that the calls were all placed by the defendant). *The Court agrees that it is reasonable to infer that the same caller is responsible for calls from the same number, whether those calls are answered or not. Accordingly, the Court finds that Plaintiff has plausibly alleged that the two calls at issue came from Pro Star.*

Taking the well-pleaded facts as true, as the Court must for the purposes of the instant motion, as the Second Amended Complaint's allegations make clear, Plaintiff has pled more than adequate facts to allow this Court to determine that Clear Lead directly placed the calls complained of at the pleadings stage. *See also Moore v. Healthcare Sols. Inc.*, No. 21-CV-4919, 2022 WL 17487823, at *3 (N.D. Ill. Dec. 7, 2022) ("[I]t is reasonable to assume that the same caller made both calls for the same reason. . . . The issue of who made the first call isn't much of a whodunit. Moore received two calls from the same number, and the second caller was Healthcare Solutions. It is reasonable to conclude that Healthcare Solutions called the first time, too. Does Healthcare Solutions share a phone number with someone else? Unlikely.").

Simply put, if someone gets a call from "John Doe," and a subpoena response identifies "John Doe" as the subscriber of the phone number and the date, time, and log in information used to place the calls at issue, it's reasonable to assume that "John Doe" placed the call. As another Court has explained, "After all, when a person introduces herself across the table as Olivia or Emma --- we generally conclude without much hesitation that is indeed who he is. So too as to the December 8 call. The caller allegedly introduced herself as 'Erica ... from [the Defendant].' Why then would it not be plausible to conclude that he was, in fact, 'Erica ... from [the Defendant]'?" *Bradshaw v. CHW Grp., Inc.*, --- F. Supp. 3d ----, 2025 WL 306783, at *3 (D.N.J. Jan. 24, 2025). Especially when viewed in light of Plaintiff's allegations of how Defendants' business model operates and the other allegations, such allegations are plainly sufficient to demonstrate a theory of liability, in this case direct liability, against Clear Lead now.

7

> B. *Plaintiff adequately alleges vicarious liability against the remaining Defendants, which is a fact-intensive inquiry inappropriate for resolution at this stage.*

An agency relationship "arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." RESTATEMENT (THIRD) OF AGENCY § 1.01; *see also Krakauer*, 925 F.3d at 659-660 (stating the same and citing the RESTATEMENT). "Once such a relationship is formed, 'traditional vicarious liability rules ordinarily make principals . . . vicariously liable for acts of their agents . . . in the scope of their authority.'" *Id.* at 660 (quoting *Meyer v. Holley*, 537 U.S. 280, 285-86 (2003)). "An essential element of agency is the principal's right to control the agent's actions", but this concept of control "embraces a wide spectrum of meanings", including "what the agent shall and shall not do, in specific or general terms." RESTATEMENT (THIRD) OF AGENCY § 1.01 cmt f. "A principal's control over an agent will as a practical matter be incomplete because no agent is an automaton who mindlessly but perfectly executes commands." *Id.*

A plaintiff is required to allege a sufficient basis for any "one of the common law agency theories." *Cunningham v. Cap. Advance Sols., LLC*, No. CV 17-13050 (FLW), 2018 WL 6061405, at *6 (D.N.J. Nov. 20, 2018). "[A] plaintiff is not required to plead all of its evidence in the complaint in order to plausibly allege agency." *Dolemba v. Ill. Farmers Ins. Co.*, 213 F. Supp. 3d 988, 996 (N.D. Ill. 2016) (citing *Dish Network*). A plaintiff must only "allege a factual basis that gives rise to an inference of an agency relationship through the use of generalized as opposed to evidentiary facts." *Klassen v. Solid Quote LLC*, 702 F. Supp. 3d 1052, 1059 (D. Colo. 2023). For TCPA claims specifically, there is a low bar to pleading vicarious liability, as a plaintiff is *not expected* to allege "facts suggesting that" the defendant: (1) "instructed" the putative agent "to make the call to" the plaintiff, (2) "had any authority over the time, means and

8

manner of" the putative agent's solicitations, or (3) "had the ability to issue instructions … on these subjects." *Dolemba*, 213 F. Supp. 3d at 997 ("But Farmers does not suggest how Dolemba could reasonably be expected to know those facts at this stage in the litigation. Indeed, it is likely that all of the documents and information that establish (or refute) the details of the agency relationship . . . are exclusively within the Defendants' custody and control.").

Ultimately, in this case, Plaintiff pleads robust facts giving rise to an inference that the remaining Defendants, Clear Credit and Manzoor, are vicariously liable. It should be noted that Clear Credit did not move to dismiss the first two claims against it, but now does. Courts hold a TCPA claimant in Mr. Rojas' circumstance need only raise the "reasonable inference" that the caller acted as defendant's agent: "To require more would effectively immunize savvier TCPA violators from liability—i.e., those with the wherewithal and means to use middlemen—or a series of increasingly removed middlemen—to solicit business through prohibited robocalling operations." *Cunningham v. Watts Guerra, LLP*, No. SA-22-CV-363, 2024 U.S. Dist. LEXIS 93370, at *35 (W.D. Tex. May 23, 2024). Plaintiff need only raise the "reasonable inference" Defendant either "apparently authorized or ratified" the calls, even if defendant did not make them itself. *Cunningham*, 2024 U.S. Dist. LEXIS 93370, at *35; *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 674, 193 L. Ed. 2d 571 (2016), as revised (Feb. 9, 2016) ("[U]nder federal common-law principles of agency, there is vicarious liability for TCPA violations.").

And considering telemarketers obfuscate their calling practices, as here, a TCPA claimant need not meet the "usual" pleading standard under a vicarious theory: "[v]icarious liability under the TCPA is a fact-intensive inquiry that does not require the usual level of particularity from the complaint." *Smith v. Liberty Mut. Ins. Co.*, No. 1:20-cv-11583, 2021 U.S. Dist. LEXIS 78307, at *12 (D. Mass. Apr. 22, 2021) (cleaned up). The standard recognizes "the information necessary

to connect all the players is likely in [defendants] sole possession." *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1301 (D. Nev. 2014). Thus, Mr. Rojas need only "plausibly" allege the theory under one of three theories, pleading either "actual authority," "apparent authority," or ratification. *Workman v. CarGuard Admin. Inc.*, No. CV-23-00961, 2024 U.S. Dist. LEXIS 11476, at *8 (D. Ariz. Jan. 22, 2024). Plaintiff here alleges facts sufficient under any one of the three theories of agency: actual authority, apparent authority, and ratification.

"An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." RESTATEMENT (THIRD) OF AGENCY § 2.01. Actual authority may be given expressly—such as when the principal states "in very specific or detailed language" how an agent is to act—or impliedly—such as when an agent acts "in a manner in which [the] agent believes the principal wishes the agent to act based on the agent's reasonable interpretation of the principal's manifestation in light of the principal's objectives and other facts known to the agent." *Hayhurst v. Keller Williams Realty, Inc.*, No. 1:19CV657, 2020 WL 4208046, at *5 (M.D.N.C. July 22, 2020) (denying motion to dismiss).

Actual agency "does not require the principal to specify the singular acts for which her or her authority exists as long as the acts are incidental to or reasonably necessary to accomplish what is authorized." *John v. Keller Williams Realty, Inc.*, No. 619CV1347ORL40DCI, 2020 WL 10502631, at *2 (M.D. Fla. Feb. 4, 2020). "The concept of scope of authority is broad. An agent has authority to act to further the principal's objectives, as the agent reasonably understands the principal's manifestations and objectives. The principal is liable for the acts of the agent to further the principal's purposes unless the agent acts entirely for the agent's benefit only." *United States v. Dish Network LLC*, 256 F. Supp. 3d 810, 923 (C.D. Ill. 2017) (citing

RESTATEMENT (THIRD) OF AGENCY § 2.02(1)). Thus, for a TCPA claim, a plaintiff sufficiently pleads that a defendant actual directed an agent's calls by alleging facts giving rise to an *inference* that the defendant was "involved" in the "sales practices and marketing procedures." *United States*, 256 F. Supp. at 922-923; *Dolemba*, 213 F. Supp. 3d at 997 ("Of course, these facts may not be sufficient to prove any theory of vicarious liability. They are more than sufficient, however, to entitle Dolemba to further discovery.").

Here, the Plaintiff has more than adequately pled facts giving rise to such an inference of actual authority as against Clear Credit and Manzoor, including based on the fact that Clear Credit's telephone number was on the telephone calls that Clear Lead sent, that Clear Credit's services were promoted during the callback number on the prerecorded advertisement, and that Manzoor is personally associated with both the Clear Credit website and telephone number advertised on the illegal prerecorded call, including through his home address. This case is nothing like the cases cited by the Defendant. For example, in *Warciak v. Subway Restaurants,* there was no evidence of a relationship between T-Mobile and Subway when plaintiff never interacted with Subway and T-Mobile sent the Plaintiff a text message offering a free sandwich "just for being w/[ith] T-Mobile," the promotion was "sent only to T-Mobile customers, and included a link to T-Mobile's [not Subway's] website." 949 F.3d 354, 357 (7th Cir. 2020).

The circumstances here could not be any different. The calls Clear Lead sent directed recipients to call a number owned by Clear Credit, a number which was subscribed to Manzoor's residential address. The websites on the calls were all Clear Credit and Manzoor's websites. Finally, the plaintiff spoke to a Clear Credit employee and received an email from Clear Credit regarding credit repair services. The calls were sent *en masse* and clearly advertised Clear

11

Credit's services. Indeed, to that end, *Charvat*[2] *v. Allstate Corp.*, and *Vessal v. Alarm.com* actually help Plaintiff. In *Charvat*, as here, the plaintiff received a call advertising lower rates on car insurance from "Allstate, GEICO, Progressive and State Farm," but the plaintiff "was connected with a sales representative of Esurance," an Allstate subsidiary. 29 F. Supp. 3d 1147, 1151 (N.D. Ill. 2014). This court held that this conduct was sufficient to entitle the Plaintiff to discovery because of Esurance's "direct participation in the call." *Id.* In *Vessal*, plaintiff received calls from various entities, including "American Home Security, American Security Services, [and] Central Security Group," selling a home security system, each of which had "agreements with Alarm.com as third-party dealers" because "[s]ome of the callers directed Vessal to Alarm.com when she asked for a web address." No. 17 C 2188, 2017 WL 4682736, at *1 (N.D. Ill. Oct. 18, 2017). This Court held that those allegations were sufficient for a holding of vicarious liability at the pleadings stage. *Id.* at *3.

      So too here, where Plaintiff received a prerecorded call from a fictitious name directing him to call another number, was connected to a Clear Credit employee, and sent emails from Clear Credit, and where discovery has also revealed Manzoor's participation in Clear Credit's marketing practices, including having his personal address as the billing address for the telephone number Clear Credit directed Clear Lead to include on the prerecorded calls and by having his personal information on the WHOIS for the Clear Credit website at the time of the calls. As the Court noted in *Vessal*, "The saving grace for Vessal is that the existence of an agency relationship is usually a factual question and any evidence of an agency relationship between Alarm.com and the identified third-party dealers is entirely within Alarm.com's control." *Id.* This is not to mention that the information of ratification at issue is "peculiarly

---

[2] Defendant's brief contains a typo in the case name, "Charvet."

within the possession and control of the defendant." *Guadian v. Debtblue LLC*, No. EP-23-CV-329-KC, 2024 U.S. Dist. LEXIS 70167, at *8 (W.D. Tex. Apr. 16, 2024). Clear Credit and Manzoor are in the unique position to know its relationship with Clear Lead and the complaint sufficiently puts the moving defendants on notice of the alleged agency relationship through the marketing arrangement alleged in the Second Amended Complaint, ¶53-73.

Defendants would have the Court believe that *Bennett* stands for the proposition that it is insufficient to infer vicarious liability when a company is named on the call. Notwithstanding the fact that that proposition contradicts *Vessal*, it's simply untrue. There, the Plaintiff relied on "one-sided namedropping of Ambetter [insurance], a product available from Celtic and possibly others." *Bennett v. Celtic Ins. Co.*, No. 20-CV-06172, 2022 WL 865837, at *4 (N.D. Ill. Mar. 23, 2022). Unlike here, and unlike in *Vessal* and *Charvat*, the plaintiff there wasn't attempted to be sold Celtic's products or even "interacted with Celtic at all, let alone immediately after connecting with the telemarketer." *Id.* But the Plaintiff here pleads such an interaction with Clear Credit when he called the number he was told to and alleges how Clear Credit hired Clear Lead to telemarket by blasting people with Clear Credit's phone number, not just name them.

And, unlike in *Lightfoot*, these facts are more than sufficient to connect the caller to the calls. *Lightfoot v. SelectQuote, Inc.*, No. 1:24-CV-04673, 2025 WL 1547495, at *3 (N.D. Ill. May 30, 2025) (distinguishing the case from other cases that involved "allegations that connect the defendant and the phone call"). The rest of Defendants' motion simply gaslights the Court into the argument that the Plaintiff did not make any of the allegations that he did, and which the plaintiff in *Lightfoot* did not. For example, Defendants claim that the Plaintiff does not allege "<u>any</u> interaction [with Clear Credit] as a result of the call with Clear Credit." Notwithstanding that this sentence is contradictory on face, Plaintiff *does* allege an interaction with Clear Credit

13

because he alleges not only that he was provided Clear Credit's website, but also "received an e-mail with paperwork regarding the debt solutions offering sold by the Defendant Clear Credit." Compl. ¶ 38-40. So too with the allegations that the "only nexus alleged between Clear Credit or Manzoor in this case is registration of a web domain" and that the "call mentioned only Total Relief Services." But the Complaint alleges far more, including that Total Relief Services is simply an illegal fictious name, not the actual caller or entity for whose benefit the calls were made. In sum, the complaint contains more than adequate facts sufficient to give rise to the inference of an actual authority theory of vicarious liability, just as in *Charvat* and *Vessal*. *Bradley v. DentalPlans.com.*, 617 F. Supp. 3d 326, 331 (D. Md. 2022) (actual authority when script used defendant's name and marketed defendant's products).

There also remains a case for apparent authority or ratification. Apparent authority is established "from a third party's perspective" and attaches when defendant's statements or conduct "reasonably give the appearance that Defendant, the purported principal, authorized [] the purported agent, to initiate the Calls on its behalf." *Banks v. Pro Custom Solar*, 416 F. Supp. 3d 171, 175 (E.D.N.Y. 2018). From Mr. Rojas' perspective, nothing suggests anything other than that Clear Credit spoke to him and directed Clear Lead to place the calls directing people to call its telephone number. As courts hold: "the smooth transfer from the initial [] contact to [a live person] and then to [another live person] of [defendant] . . . shows a cooperative relationship from which one may infer authority or apparent authority." *Doyle v. GoHealth, LLC*, No. 22-04291, 2023 U.S. Dist. LEXIS 241083, at *7 (D.N.J. Dec. 7, 2023). Ratification "is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." RESTATEMENT (THIRD) OF AGENCY § 4.01(1). A principal can ratify an act by "manifesting assent that the act shall affect the person's legal relations," or by

14

"conduct that justifies a reasonable assumption that the person so consents." *Id.* § 4.01(2). That includes circumstances like those here, where Defendant "controls a telemarketing scheme whereby [defendant] sets the criteria for leads, and [the agent] makes solicitation calls to potential clients on [defendant]'s behalf." *Gonzalez v. Burger L., LLC*, No. 4:23-CV-1094, 2024 U.S. Dist. LEXIS 41018, at *9 (E.D. Mo. Mar. 8, 2024) (denying a motion to dismiss when plaintiff alleged she received "more than one solicitation call on behalf of [defendant], and during at least one call, she was transferred by [the agent] to [defendant]").

Defendants Clear Credit and Manzoor accepted the benefits of the illegal conduct by continuing to market to the Plaintiff and sending the Plaintiff an email to purchase Defendants' services and complete the process. Simply put, Defendants have no business sending out highly illegal prerecorded message calls containing their telephone number that ring to their call center, who then proceed to sell their products. Thus, the Court should find Defendants likewise accepted the benefits of the prerecorded calling conduct here.

## V.  CONCLUSION

The Plaintiff's complaint gives more than adequate notice of the Plaintiff's claims and the grounds upon which they rest. The Defendants' "we didn't do it" argument is not proper now. These details surrounding the calls are more than sufficient to put Defendants on notice of the claims, and are in the best position to explain why they appear on the evidence in this case. Defendants' new attempts at a smoke-and-mirrors game of are an ill-contrived effort to escape liability under the TCPA and one which runs contrary to Clear Credit's prior answer. Should this Court at all find the Plaintiff's pleading at all deficient, the Court only need give the order granting the Plaintiff leave to amend and he will do so to rectify any perceived deficiency.

Dated: December 30, 2025

                                              */s/ Andrew Roman Perrong*
                                              Andrew Roman Perrong, Esq.
                                              Perrong Law LLC
                                              2657 Mount Carmel Avenue
                                              Glenside, Pennsylvania 19038
                                              Phone: 215-225-5529 (CALL-LAW)
                                              Facsimile: 888-329-0305
                                              a@perronglaw.com

## **CERTIFICATE OF SERVICE**

      I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

December 30, 2025

                                              */s/ Andrew Roman Perrong*
                                              Andrew Roman Perrong, Esq.
                                              Perrong Law LLC
                                              2657 Mount Carmel Avenue
                                              Glenside, Pennsylvania 19038
                                              Phone: 215-225-5529 (CALL-LAW)
                                              Facsimile: 888-329-0305
                                              a@perronglaw.com