**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JORGE ROJAS, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:25-cv-1056 |
| v. | ) ) | Hon. John J. Tharp |
| | ) ) | Magistrate Judge Keri L. Hotaling |
| CLEAR CREDIT AI, LLC, CLEAR LEAD SOLUTIONS CORP., and SAJEEL MANZOOR | ) ) ) ) | |
| Defendants. | ) | |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
**THE SECOND AMENDED CLASS ACTION COMPLAINT**

Jorge Rojas' response to Defendants' motion to dismiss his Second Amended Complaint (the "SAC") substitutes repetition and conclusion for identification of pleaded fact and a legal basis that would support a claim against any of the Defendants. In characterizing what is pleaded, the response does not cite to a single paragraph of the SAC. Dkt. 68 at 1-3. It could not do so because the pleaded allegations do not state a claim. That this remains the case through three iterations of the complaint means that it is appropriate now to dismiss this case with prejudice. Defendants reply below *seriatim*, explaining in each of their cases how the response fails to identify a basis to sustain a claim against them.

**A.**      **The SAC Fails to State a Direct Liability Claim Against Clear Lead Solutions**

Rojas' case against Clear Lead Solutions Corp. ("Clear Lead") relies exclusively on a direct liability theory. Dkt. 58 ¶ 35. The response confirms that Rojas relies primarily on the argument that Clear Lead was associated with the "JustDeliverIt" account from which the single phone call to Rojas was made. *See* Dkt. 68 at 4 (arguing, "There is no clearer evidence of direct liability than

phone records from a phone company confirming that the subject call was placed from an account in the Defendants' name"). This is the same argument that the Court rejected when Rojas made it in support of the dismissed FAC. Dkt. 57 at 3 (observing this shows "at most" that Clear Lead's infrastructure was used).

The response argues that Clear Lead must have made the call because otherwise, "who did?" Dkt. 68 at 4. In support it cites to one of the many out-of-circuit District Court decisions on which it relies, *Consol. Grain & Barge, Inc. v. Anny*, No. CIV.A. 11-2204, 2013 WL 486687, at *6 (E.D. La. Feb. 6, 2013). But that case is inapposite. It did not involve the TCPA or even a Rule 12(b)(6) motion. It was a breach-of-lease case and the decision concerned a jurisdictional challenge over injury-in-fact. The plaintiff there was Consolidated Grain & Barge, Inc. and the defendant argued that entity did not suffer an injury because it had signed the lease in the name of an unincorporated subdivision of itself. The Court disagreed. *Id.* (holding plaintiff suffered harm from breach even if lease identified the lessor as "CGB Marine Services at Mile 164*, a division of [plaintiff]*") (emphasis added). This has no bearing at all on this case.

The question of "who made the call" here is apparently answered by the SAC's exhibits, which identify former defendant Sajjad Haider. The response, like the SAC, refers to a subpoena response from a company called JustDeliverIt, arguing that the subpoena response shows that the number that made the call to Rojas was Clear Lead's number. *See* Dkt. 68 at 3-4. However, the signature block on the attached JustDeliverIt "know your customer" form identifies only Haider:

| Customer Name | Sajjad Haider |
|---|---|
| Signature | |
| Printed Name | Sajjad Haider |
| Title | MD |
| Date | 09/12/2024 |

2

Dkt. 58-1 at 2. Haider's identification as the customer in the signature block is consistent with the SAC's allegation that the account was "'applied for and accessed solely through Mr. Sajjad Haider.'" Dkt. 58 ¶ 24. While Haider apparently used Clear Lead's name in the application for the JustDeliverIt account, there is no allegation in the SAC that Haider was employed by or otherwise affiliated with Clear Lead. Moreover, while it is alleged that the message left on Rojas' phone included a call back number and that number was owned by Haider, the SAC alleges that "Haider signed up for the account personally, and as a responsible entity …." *Id.* ¶ 31.

This case is nothing like the one from the Central District of California that Rojas cites, Dkt. 68 at 6-7, in which the Plaintiff allegedly received two calls from the same number and, in the second call, the caller was identified as the Defendant who then sent the Plaintiff a quote and further sent an employee of the Defendant to the Plaintiff's house. *See Bird v. Pro Star Builders, Inc.*, No. 222CV03610JLSJEM, 2022 WL 18216007, at *1 (C.D. Cal. Nov. 28, 2022); *see also Moore v. Healthcare Sols. Inc.*, No. 21-CV-4919, 2022 WL 17487823, at *1 (N.D. Ill. Dec. 7, 2022) (in which plaintiff also received two calls from same number, during the second of which "Carol Jandera, an employee of Defendant Healthcare Solutions, was on the other end of the line"), cited Dkt. 68 at 7. Rojas does not allege that he received two calls – just one – and he does not allege that anybody introduced themselves as an employee of Clear Lead. *Compare also Bradshaw v. CHW Grp., Inc.,* 763 F. Supp. 3d 641, 646 (D.N.J. 2025) (single call in which a message was left stating, "'[h]ey, this is Erica calling from [the Defendant]," and it went on to advertise discounts for the type of product that Defendant is alleged to sell), cited Dkt. 68 at 7.

Neither can Rojas avoid the obvious distinction between the cases he cites and the facts he alleges by arguing that the Court should treat the message he was left as coming from Clear Lead notwithstanding that the SAC alleges that the name left on the message was "Total Relief

Services." *See* Dkt. 68 at ¶¶ 27-28 (making the conclusory allegation, without supporting fact, that "Total Relief Services" should be treated as an alias for any and all "Defendants"). The response cites no precedent that could support doing so. To the contrary, as discussed, in each case it cites there was a specific allegation that the defendant was identified by name in the subject calls before the courts concluded a plaintiff had stated a claim of direct liability under the TCPA.

Neither does the response address with regard to Rojas' claims against Clear Lead the Northern District of Illinois authorities that Clear Lead cited in opening, and which this Court cited when it dismissed the First Amended Complaint, which require for direct liability allegations of facts that show "for example, directing the exact 'timing and manner of the call.'" Dkt. 65 at 6, citing *Warciak v. Subway Rests., Inc.*, No. 1:16-CV-08694, 2019 WL 978666 (N.D. Ill. Feb. 28, 2019), *aff'd on other grounds*, 949 F.3d 354 (7th Cir. 2020); *see also* Dkt. 57 at 3. The SAC includes no such allegations here.

As such, the response fails to demonstrate how the SAC has satisfied the standards applicable in this Circuit and this District to state a direct liability TCPA claim against Clear Lead.

**B.      The SAC Fails to Allege a Vicarious Liability Claim against Clear Credit**

Concerning Clear Credit, the response repeatedly brings up that Clear Credit (at the time represented by different counsel) answered the First Amended Complaint (denying its allegations) rather than file a motion to dismiss. *See, e.g.,* Dkt. 68 at 2, 15 (referring to prior answer); *see also* Dkt. 24 *passim* (denying allegations). This is a red herring. Not only did prior counsel pray in its answer that the Court "[d]ismiss Plaintiff's Amended Complaint with prejudice," *id.* at 15, but as a matter of law the prior answer is a nullity. *See Chasensky v. Walker*, 740 F.3d 1088, 1094 (7th Cir. 2014) (rejecting argument that failure to raise matter in answer to original complaint prevented doing so upon a motion to dismiss an amended pleading because "a plaintiff's new complaint

4

wipes away prior pleadings"); *Donald v. City of Chicago*, 539 F. Supp. 3d 912, 922 (N.D. Ill. 2021) (citing *Chasensky* and rejecting argument that prior answer precluded motion to dismiss after amended complaint is filed because new complaint "wipes away prior pleadings").

Neither does the response demonstrate how the SAC has stated a vicarious liability TCPA claim against Clear Credit. *See* Dkt. 58 ¶ 35 (confirming this is the only theory under which Clear Credit is named in the SAC). There is no dispute that vicarious liability requires allegations of fact that plausibly establish an agency relationship, *compare* Dkt. 65 at 7-10 *with* Dkt. 68 at 8-11, but the response attempts to minimize what is required to plead an agency relationship.

The response relies almost entirely on a lengthy discussion of agency boilerplate from the Restatement or almost exclusively from out-of-district and out-of-circuit decisions. Dkt. 68 at 8-11. That discussion includes citation to just one Northern District of Illinois case, *Dolemba v. Ill. Farmers Ins. Co.*, 213 F. Supp. 3d 988 (N.D. Ill. 2016). The response wrongly suggests that decision holds that there is a "low bar" specific to alleging agency for vicarious liability purposes under the TCPA. *See* Dkt. 68 at 8. In fact, *Dolemba* presents a good example of what is required to plead agency and it shows that the bar is not lower in TCPA cases. Thus, the call in *Dolemba* invited Plaintiff to attend a "town hall" by a Farmers Insurance agent about becoming a Farmers agent, 213 F. Supp. at 996; when he called back, Plaintiff heard a recorded message from "Jim Lombardi" that further referenced Farmers Insurance, *id.*; the complaint further alleged that Farmers held Lombardi out as its authorized agent on its public website, including in particular with regard to recruiting new agents and that Plaintiff saw and relied upon that website, *id.*. It was on the basis of these detailed factual allegations that the Court concluded Plaintiff had alleged sufficient facts to at least allege a plausible agency or apparent agency relationship. *Id.* at 996-97.

This is in stark contrast to the SAC's allegations concerning Clear Credit. No nexus is alleged in the SAC between Clear Credit and the only call Rojas alleges that he received. The response argues that the number left on the message to Rojas was "owned by Clear Credit," Dkt. 68 at 11, but this is not what the SAC alleges. Rather, it alleges that "the customer associated with that phone number is also former Defendant Sajjad Haider, who signed up for the account personally, and as a responsible entity …." Dkt. 58 ¶ 31. The SAC cites to a subpoena response from Ring Central, which lists Clear Credit under "Company" after Haider's name. Dkt. 58-4 at 2. However, despite more than eight months of discovery in this case, there is nothing else tying this number to Clear Credit.

The response also argues that "[t]he websites on the calls" were Clear Credit's. Dkt. 68 at 11. But the SAC does not allege that any website was provided on the only phone call that Rojas is alleged to have received. Dkt. 58 ¶ 27. Rather, the SAC alleges that when Rojas called back, he was referred to a website with a clearsolution.ai domain (not "Clear Credit"). *Id.* ¶ 39. There is nothing that links clearsolution.ai to Clear Credit, either in any factual allegation in the SAC or in the SAC exhibit that purports to state the history of that domain. *See* Dkt. 58-5.

After the second call, the SAC alleges that Rojas received an email from someone named Jerome who used the address Jerome.k@clearsolutions.ai. *Id.* ¶ 40. Jerome is not alleged to have been an employee of either defendant, though the SAC alleges that later Jerome later sent Rojas paperwork for services Clear Credit sold. *Id.*

*If* they were true, these allegations might plausibly support an argument that Clear Credit was the ultimate beneficiary of the call to Rojas – several steps removed from the initial call. But being a beneficiary does not equate to being a principal of the call maker. This was recognized by the Seventh Circuit in *Warciak v. Subway Restaurants, Inc.*, 949 F.3d 354 (7th Cir. 2020), cited in

opening. Dkt. 65 at 7. Affirming dismissal of a vicarious liability TCPA claim there, the Court observed that "[w]hile an agency relationship can be created by contract, not all contractual relationships form an agency." *Id.* at 357. Accordingly, just because Subway in that case was a beneficiary of a marketing text from T-Mobile, that did not state a claim of agency sufficient to state a claim. *Id.* The response attempts to distinguish *Warciak* by arguing that in that case there was no "evidence" of a relationship between T-Mobile and Subway because the Plaintiff did not interact with Subway. Dkt. 68 at 11. But neither did Rojas ever interact with Clear Credit. Instead, it is alleged only that someone named Jerome sent him paperwork after two phone calls that allegedly promoted Clear Credit's services.

*Warciak* is entirely consistent with *Bennett v. Celtic Ins. Co.*, No. 20-CV-06172, 2022 WL 865837 (N.D. Ill. Mar. 23, 2022). The Court there dismissed a vicarious liability claim in that case even though the paperwork plaintiff received after multiple calls promoted an insurance plan "promoted and sold by Celtic" and that live operators she spoke to "further confirmed that the calls and products sold were from, or on behalf of Celtic." *Id.* at *3. Dismissing the claim, and citing *Warciak*, the Court observed that "courts have dismissed complaints that only allege a contractual relationship between the telemarketer and the defendant." *Id.* at *4. Thus, the mere fact that a defendants' services were marketed, as alleged, is insufficient.

These Seventh Circuit and Northern District of Illinois authorities apply directly. The SAC does not allege any interaction between Clear Credit and Rojas. The only direct interaction alleged in this case is between Rojas and someone named Jerome who, *after the initial call*, used an email with a domain that the SAC's exhibits show had no connection with Clear Credit. *See* Dkt. 58-5. Under no authority would this be sufficient to allege any agency relationship between Clear Credit and whomever made the initial call to Rojas.

The response is further incorrect that this case is similar to either *Chavrat v. Allstate Corp.*, 29 F. Supp.3d 1147 (N.D. Ill. 2014) or *Vessal v. Alarm.com*, No. 17 C 2188, 2017 WL 4682736 (N.D. Ill. 2017). *See* Dkt. 68 at 11-12. The response acknowledges that in *Chavrat* the call to the plaintiff explicitly referenced defendant Allstate. *Id.* Not only that, when the plaintiff in that case indicated interest, he was directed to a prerecorded message that further referenced Allstate by name, after which he was connected to a salesperson from Allstate. *Chavrat*, 29 F. Supp. 3d at 1150. Similarly, in *Vessal*, in which the defendant was Alarm.com, the Plaintiff was directed in the subject call to the Alarm.com website. *See* Dkt. 68 at 12; *Vessal*, 2017 WL 4682736, at *1 (N.D. Ill. Oct. 18, 2017) (noting that the complaint in that case alleged that "[s]ome of the callers directed Vessal to Alarm.com when she asked for a web address").

Ultimately, there is no allegation in the SAC that Clear Credit acted as a principal directing the call to Rojas. If this were sufficient, then any complaint that purported to identify the party whose services were marketed would be sufficient to allege vicarious liability under the TCPA against the provider of those services. That is not the law, as demonstrated by *Warciak*, *Bennett*, and the other authorities cited by Clear Credit in opening.

Neither does the SAC allege apparent authority or ratification vis-à-vis Clear Credit, as the response suggests – again without citation to any Seventh Circuit or Northern District of Illinois precedent. Dkt. 68 at 14-15. This requires allegations of facts to plausibly show that when Rojas received the initial call, he understood that it was being made by Clear Credit and thus understood that Clear Credit was the principal. *See Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765, 778 (N.D. Ill. 2014) (dismissing complaint; holding "Plaintiffs' apparent authority theory against Nationwide and Farmers fails because Plaintiffs do not allege that they believed Variable

called them as an agent of Nationwide or Farmers.") No call in this case named Clear Credit. Neither was it identified in the domain address provided later.

Moreover, these alternative theories require conduct by the defendant. Thus, [i]t is well-established that apparent authority must derive from the statements or actions of the alleged principal, not the alleged agent." *Smith*, 30 F. Supp. 3d at 778, citing *Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1064 (7th Cir. 2000) ("[o]nly the words or conduct of the alleged principal, not the alleged agent, establish the [actual or apparent] authority of an agent."); *Warciak*, 949 F.3d at 357 ("Apparent authority exists when a third-party reasonably relies on the principal's manifestation of authority to an agent.") The SAC alleges no words or conduct by Clear Credit. Instead, the SAC and the response fall back to the argument that the call to Rojas stood to benefit Clear Credit to the extent it might ultimately have resulted in a sale of Clear Credit's products. Even accepting the allegation of potential benefit as true, this would not as a matter of law be sufficient to allege the principal-agent relationship required to make out a vicarious liability claim under the TCPA.

## C. The SAC Does Not State a Vicarious Liability Claim Against Manzoor

The SAC further fails to state a vicarious liability claim against Manzoor. Throughout the response, Manzoor is simply lumped together with the corporate defendants, as if any distinction between them is properly ignored. But the SAC alleges no facts (and the response suggests none) to support disregard of the legal distinction between Manzoor and Clear Credit, even if it is true (as alleged) that Manzoor is a shareholder of Clear Credit and/or Clear Lead. Dkt. 58 ¶ 10.

Otherwise, the only allegations of fact about Manzoor are that his address was used by Haider when Haider registered for the phone number that Rojas called back. *Id.* ¶ 31. The SAC suggests that Manzoor registered the domain for the website Rojas was provided after Rojas made

the second phone call, *i.e.*, clearsolutions.ai; the SAC's exhibits demonstrate, however, that this is an overstatement. As explained in opening, the domain registration shows that the domain owners are Hammad Khan and Basit Malik, *see* Dkt. 58-5 at 2-4; Manzoor is only referenced in an email follow up that plaintiff's counsel wrote seeking historical information from some unstated period, *id.* at 1 The email states that Manzoor was "historically" associated with the domain, but no dates are provided to support any insinuation that Manzoor owned or controlled the domain at any relevant time. *See* Dkt. 65 at 4, citing Dkt. 58-5. The response does not dispute or address these facts. Neither would historical registration of a domain name provided in response to a call back be sufficient in any event to allege that whoever made that call was an agent of Manzoor. *See* Dkt. 65 at 10. The response cites no precedent applying vicarious liability based on so thin a reed.

Even accepting for the purposes of this motion that Manzoor is a shareholder of the corporate defendants, this simply does not suffice to state a vicarious liability claim against him under the TCPA. To hold otherwise, as the response argues, would be to do away entirely with corporate forms in TCPA litigation. Such a result would be without basis in law. *See Savanna Grp., Inc. v. Trynex, Inc.,* No. 10 C 7995, 2013 WL 4734004, at *7 (N.D. Ill. Sept. 3, 2013) (holding plaintiff had no TCPA claim against company owner as a matter of law; observing that "[u]nder the general background principles of vicarious liability, 'in the absence of special circumstances it is the corporation, not its owner or officer, who is the principal or employer, and thus subject to vicarious liability for torts committed by its employees or agents.'") Again, the response cites no example of vicarious liability based entirely on status as a shareholder of a company. Neither does it identify any other special circumstances that would support holding Manzoor personally liable on a vicarious liability theory for the call that Rojas received in this case.

**CONCLUSION**

In the end, after three attempts, and eight months of discovery, Rojas has not – because he cannot – state a claim under the TCPA under any one of the Defendants. Rojas's response does nothing to avoid the conclusion that, at this juncture, this case is properly dismissed and, this time, with prejudice.


Date: January 13, 2026                                Respectfully submitted,

                                                       **CLEAR CREDIT AI, LLC,**
                                                       **CLEAR LEAD SOLUTIONS CORP., and**
                                                       **SAJEEL MANZOOR,**

                                                       By:     /s/  Robert M. Andalman
                                                               One of their Attorneys

Robert M. Andalman (Atty. No. 6209454)
Rachael Blackburn (Atty. No. 6277142)
Khoa D. Trinh (Atty. No. 6351044)
ARONBERG GOLDGEHN DAVIS & GARMISA
225 West Washington St., 28th Floor
Chicago, IL 60606
Tel.: (312) 755-3161
randalman@agdglaw.com
rblackburn@agdglaw.com
ktrinh@agdglaw.com

## CERTIFICATE OF SERVICE

I, Robert M. Andalman, an attorney, hereby certify that the foregoing ***REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT*** was electronically filed on January 13, 2026, and will be served by ECF on counsel of record.

/s/ Robert M. Andalman